FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

VAHE DADYAN,

*Defendant-Appellant*.

No. 21-50237

D.C. No.
2:20-cr-00579-
SVW-8

OPINION

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ARTUR AYVAZYAN, AKA Arthur
Ayvazyan,

*Defendant-Appellant*.

No. 21-50302

D.C. Nos.
2:20-cr-00579-
SVW-3
2:20-cr-00579-
SVW

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted June 8, 2023
Pasadena, California

Filed August 7, 2023

Before:  MILAN D. SMITH, JR. and ROOPALI H.
DESAI, Circuit Judges, and CAROL BAGLEY AMON,[*]
District Judge.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### Criminal Law

The panel affirmed in part and vacated in part the district court's imposition of restitution obligations on Vahe Dadyan and Artur Ayvazyan following their convictions of various offenses stemming from an eight-person conspiracy to fraudulently obtain and launder millions of dollars in federal Covid-relief funds that were intended to assist businesses impacted by the pandemic.

The panel held that, under the Mandatory Victims Restitution Act (MVRA), the district court properly imposed

---

[*] The Honorable Carol Bagley Amon, United States District Judge for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

restitution in the full amount of the loss caused by the conspiracy instead of just the loss caused by the fraudulent loan applications Vahe and Artur personally played a role in submitting.

As to Artur, the panel held that the district court properly ordered a restitution amount under the MVRA based on the "value" of fraudulently obtained property, which exceeded the amount of "actual loss" the district court found when sentencing him under U.S.S.G. § 2B1.1(b)(1). Artur's proposed rule to make a Guidelines-loss finding a hard cap on a restitution calculation could not be squared with Ninth Circuit precedent, or with the text and purpose of the MVRA.

The panel held that Artur failed to establish that the district court clearly erred in calculating the amount of restitution.

The panel held that precedent foreclosed Artur's argument that his Fifth and Sixth Amendment rights to due process and a jury trial required that a jury, not a district judge, find all facts underpinning restitution beyond a reasonable doubt.

As to Vahe, the panel vacated and remanded for the district court to amend his judgment and commitment order to specify, as the government conceded, that his restitution obligation runs jointly and severally with those of his four trial co-defendants.

In separately filed memorandum dispositions, the panel affirmed Vahe and Artur's jury convictions, affirmed the district court's application of the Sentencing Guidelines to Artur, and vacated and remanded for Artur's resentencing

because the district court plainly erred by failing to invite his allocution.

## COUNSEL

Verna J. Wefald (argued), Law Office of Verna Wefald, Pasadena, California, for Defendant-Appellant Vahe Dadyan.

Kathryn A. Young (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Federal Public Defender's Office, Los Angeles, California; for Defendant-Appellant Artur Ayvazyan.

David M. Lieberman (argued) and Christopher Fenton, Attorneys, Appellate and Fraud Sections; Lisa H. Miller, Deputy Assistant Attorney General; Kenneth A. Polite, Jr., Assistant Attorney General; E. Martin Estrada, United States Attorney; Criminal Division, United States Department of Justice, United States Attorney's Office; Washington, D.C.; Daniel G. Boyle and Scott Paetty, Assistant United States Attorneys; Bram M. Alden, Criminal Appeals Section Chief; United States Department of Justice, United States Attorney's Office; Los Angeles, California; Jeremy R. Sanders, Trial Attorney; United States Department of Justice; New York, New York; for Plaintiff-Appellee.

# OPINION

M. SMITH, Circuit Judge:

Vahe Dadyan and Artur Ayvazyan were convicted of various offenses stemming from an eight-person conspiracy to fraudulently obtain and launder millions of dollars in federal Covid-relief funds that were intended to assist businesses impacted by the pandemic. On appeal, Vahe and Artur challenge their restitution obligations on both legal and factual grounds. We affirm their restitution obligations, except that we vacate and remand for Vahe's judgment and commitment order to be amended to specify that, as all parties agree, his restitution obligation runs jointly and severally with those of his trial co-codefendants.[1]

## FACTUAL BACKGROUND

In March 2020, the federal government provided two lifelines to businesses impacted by the Covid-19 pandemic. The Coronavirus Aid, Relief, and Economic Security (CARES) Act established the Paycheck Protection Program (PPP), which made billions of dollars in government-guaranteed loans available to qualifying businesses for payroll retention and other authorized expenses. Pub. L. No. 116-136, § 1102, 134 Stat. 281, 286–94 (2020). The CARES Act also authorized the Small Business Administration, through the Economic Injury Disaster Loans (EIDL) program, to make low-interest loans to qualifying

---

[1] In separately filed memorandum dispositions, we affirm Vahe and Artur's jury convictions, affirm the district court's application of the Sentencing Guidelines to Artur, and vacate and remand for Artur's resentencing because the district court plainly erred by failing to invite his allocution.

businesses for certain authorized expenses, including providing sick leave to employees who contracted Covid and maintaining payroll during Covid-related business disruptions. *Id.* § 1110, 306–08.

Vahe, Artur, and six other individuals conspired to submit fraudulent PPP and EIDL loan applications and, once those loan applications were approved, to launder the fraudulently obtained funds.[2] Vahe, for example, signed a $157,500 PPP loan application stating that his business had eleven employees and average monthly payroll expenses of $63,000—but, in reality, his business had no employees and no payroll expenses. Similarly, Artur (among other things) submitted a $124,000 PPP loan application containing false payroll information. Nor did Vahe and Artur use the PPP funds for authorized business expenses. Instead, after taking a circuitous route, the bulk of Vahe's and Artur's PPP funds ended up facilitating co-conspirators' multi-million-dollar real estate transactions.

A jury convicted Vahe of conspiracy to commit bank and wire fraud (18 U.S.C. §§ 1343–1344, 1349); conspiracy to commit money laundering (*id.* § 1956(h)); and substantive counts of wire fraud, bank fraud, and concealment money laundering (*id.* §§ 1343–1344, 1956(a)(1)(B)(i)). The district court sentenced Vahe to one year and one day in prison and held him jointly and severally liable along with his trial co-defendants for $10,706,188.13 in restitution—with that figure representing the district court's calculation

---

[2] Because Vahe and Artur are related to and share the same last names as some of their co-conspirators, we refer to them by their first names.

of all losses the conspiracy directly and proximately caused to victims after Vahe joined it.[3]

A jury convicted Artur of conspiracy to commit bank and wire fraud (18 U.S.C. §§ 1343–1344, 1349); conspiracy to commit concealment money laundering (*id.* § 1956(h)); substantive counts of wire and bank fraud (*id.* §§ 1343–1344); and aggravated identity theft (*id.* § 1028A(a)(1)). The district court sentenced Artur to five years in prison and held him jointly and severally liable along with his trial co-defendants for $17,723,141.26 in restitution—with that figure representing the district court's calculation of all losses the conspiracy directly and proximately caused to victims. Vahe and Artur timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. "The legality of a restitution order is reviewed *de novo*, as is the district court's valuation methodology. If the order is within statutory bounds, then the restitution calculation is reviewed for abuse of discretion, with any underlying factual findings reviewed for clear error." *United States v. Gagarin*, 950 F.3d 596, 607 (9th Cir. 2020) (cleaned up).

## ANALYSIS

### I. Co-Conspirator Liability

Vahe and Artur argue that the district court erred as a matter of law by imposing restitution in the full amount of loss caused by the conspiracy instead of just the loss caused by the fraudulent loan applications they personally played a

---

[3] As explained below, the parties agree that Vahe's restitution obligation runs jointly and severally with his trial co-defendants, but his current judgment and commitment order does not reflect that. *Infra* section V.

role in submitting.[4]  We reject this argument as foreclosed by precedent: Where a defendant is convicted of conspiracy, the Mandatory Victims Restitution Act (MVRA) authorizes a district court to hold the defendant jointly and severally liable, *see* 18 U.S.C. § 3664(h), "for *all* [victims] harmed by the *entire* scheme," *United States v. Riley*, 335 F.3d 919, 931 (9th Cir. 2003) (emphasis added).

In *Riley*, the defendant pled guilty to, among other offenses, conspiracy to produce fictitious financial instruments (there, checks and money orders).  *Id.* at 923–25.  Challenging his restitution obligation, the defendant argued that "he should not be held accountable for the losses caused by his coconspirators' check cashing"—that is, his co-conspirators' conduct within the scope of and in furtherance of the conspiracy he joined.  *Id.* at 931.  We rejected this argument and held: "[I]n a case involving a conspiracy or scheme, restitution may be ordered for all persons harmed by the entire scheme. . . . A conspirator is vicariously liable for reasonably foreseeable substantive crimes committed by a coconspirator in furtherance of the conspiracy."  *Id.* at 931–32.  So too here: The district court did not err by holding Vahe and Artur jointly and severally liable for restitution in the full amount of loss that the entire conspiracy caused.[5]

---

[4] Vahe's restitution obligation (about $10.7 million) is less than Artur's (about $17.7 million) because the district court excluded from Vahe's obligation all losses caused before Vahe joined the conspiracy.

[5] This is not to suggest that a district court *must* follow the approach taken here.  Instead, a district court has a choice where it "finds that more than 1 defendant has contributed to the loss of a victim."  18 U.S.C. § 3664(h).  A court may, as the district court did here, hold each

## II. Different Restitution and Guidelines-Loss Calculations

Artur argues that the district court erred as a matter of law by ordering a restitution amount (about $17.7 million) that exceeded the amount of loss the district court found when sentencing him (more than $1.5 million but less $3.5 million). As above, our precedent forecloses this argument: There is no categorical rule that restitution must be equal to or less than the amount of loss found when applying Sentencing Guidelines § 2B1.1(b)(1) or similar loss-based Guidelines sections.

As Artur's argument suggests, MVRA restitution calculations in property-deprivation cases and Guidelines section 2B1.1(b)(1) loss calculations do share common ground. When calculating MVRA restitution for a property-based offense and the "return of the [fraudulently obtained] property . . . is impossible, impracticable, or inadequate," the district court "shall require" the defendant to pay "the *value* of the property." 18 U.S.C. § 3663A(b)(1)(B) (emphasis added). When calculating the Guidelines range for a defendant convicted of a standard property-deprivation crime, a district court increases the defendant's Guidelines range to account for the amount of "loss" caused, with loss defined as the greater of the "actual" or "intended" amount of "pecuniary harm." U.S.S.G. § 2B1.1(b)(1) & Application Note 3(A). Given the high-level similarity of these terms ("value" of fraudulently obtained property and "pecuniary harm"), restitution and Guidelines-loss figures often mirror one another when the Guidelines calculation is based on actual (rather than intended) loss. *See United States v.*

---

defendant jointly and severally "liable for payment of the full amount of restitution," or it "may apportion liability among the defendants." *Id.*

*Lawrence*, 189 F.3d 838, 842 (9th Cir. 1999) ($574,700 for both); *cf. United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013) (Guidelines § 2B5.3(b)(1) loss of at least $200,000; restitution of $247,144).

Moreover, some of our decisions include statements equating restitution and actual loss. *See, e.g.*, *United States v. Begay*, 33 F.4th 1081, 1096 (9th Cir. 2022) ("any award is limited to the victim's actual losses" (citation omitted)); *United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011) ("[a] district court may not order restitution such that victims will receive an amount greater than their actual losses"); *United States v. Stoddard*, 150 F.3d 1140, 1147 (9th Cir. 1998) ("[r]estitution can only be based on actual loss"). As we have done before, "[w]e acknowledge that [these decisions] use of the phrase 'actual loss' in discussion of restitution generates some confusion." *United States v. Nosal*, 844 F.3d 1024, 1046–47 (9th Cir. 2016) (citation omitted). That is because those decisions used "actual loss" in the colloquial sense, not necessarily tethered to a Guidelines calculation. The point being emphasized in those statements is that victims may not receive restitution that exceeds the losses they actually suffered.

But those statements and the noted similarities between restitution and Guidelines loss do not add up to the categorical rule, advanced by Artur, that once a court determines "actual loss" for Sentencing Guidelines purposes, its restitution determination cannot exceed that amount. Instead, when our court has actually been presented with Artur's categorical argument, we have rejected it. In *Nosal*, we explained: "We must initially decide whether, as [the defendant] urges, the restitution award is invalid because it exceeds the actual loss that the district court determined for the purposes of the Sentencing Guidelines

U.S.S.G. § 2B1.1(b) . . . . The answer to that question is found in our observation that 'calculating loss under the guidelines is not necessarily identical to loss calculation for purposes of restitution.'" *Id.* at 1046 (citation omitted). Indeed, we have cautioned district courts to not reflexively "rely on [their] calculation of the loss under the Sentencing Guidelines to determine the amount of restitution as the two measures serve different purposes and utilize different calculation methods." *Anderson*, 741 F.3d at 952; *see also United States v. Gossi*, 608 F.3d 574, 582 (9th Cir. 2010) ("we reject [the defendant's] argument that we should look to the advisory Sentencing Guidelines for calculating the victim's losses"). Artur's proposed categorial rule, which would make a Guidelines-loss finding a hard cap on a restitution calculation, cannot be squared with our court's precedent.

Nor can Artur's proposed categorical rule be squared with the text and purpose of the MVRA. The MVRA does not just set forth the high-level guidance that restitution should equal the "value" of fraudulently obtained property; it provides specific instructions on how to calculate "value" in specific situations—sometimes doing so in ways that expressly contradict the Guidelines' approach to calculating loss. Consider the following two examples: The MVRA requires compensation for "expenses incurred during participation in the investigation," while Guidelines commentary provides that "[l]oss shall not include . . . costs incurred by victims primarily to aid the government in[] the prosecution and criminal investigation of an offense." *Nosal*, 844 F.3d at 1046–47 (quoting 18 U.S.C. § 3663A(b)(4); U.S.S.G. § 2B1.1 Application Note 3(D)(ii)). Similarly, the MVRA "can include prejudgment interest," *United States v. Catherine*, 55 F.3d 1462, 1465

(9th Cir. 1995), while Guidelines commentary provides that "[l]oss shall not include . . . interest of any kind," U.S.S.G. § 2B1.1 Application Note 3(D)(i). In each example, the MVRA not only tolerates but requires a restitution calculation that exceeds Guidelines loss.

That is not to suggest that a large discrepancy will always be without significance. An unexplained discrepancy may, in certain cases, facilitate a defendant's clear-error challenge to his or her restitution obligation—though we caution against overreliance on a discrepancy, as it does not indicate *which* figure, restitution or Guidelines loss, might be erroneous.[6] Or, an unexplained discrepancy not rooted in statutory differences might provide a hint that the district court included a non-cognizable form of loss in its restitution calculation. But to reiterate our holding: A discrepancy, standing alone, does not establish legal error.

### III. Clear-Error Challenge

We now turn to and reject Artur's clear-error challenge. In the district court, "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence," with the government bearing "[t]he burden of demonstrating the amount of loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e). In resolving such a dispute, the district court must rely on "evidence that possesses sufficient indicia of

---

[6] Here, for instance, the government suggested at oral argument that the district court's Guidelines loss calculation constituted procedural error, before clarifying that it was not raising that argument on appeal. "Because the government did not take an appeal" on this issue and Artur "has nothing to gain from a higher advisory guidelines range," we express no view on whether the district court committed procedural error. *United States v. Dokich*, 614 F.3d 314, 320 (7th Cir. 2010).

reliability to support its probable accuracy." *Anderson*, 741 F.3d at 951–52 (citation omitted); *see also United States v. Waknine*, 543 F.3d 546, 557–58 (9th Cir. 2008) (victim affidavits in question "were too summary and too conclusory to be sufficiently reliable in the face of [the defendant's] objections"). "[E]xact precision is not required and district courts do have a degree of flexibility in accounting for a victim's complete losses." *Anderson*, 741 F.3d at 954. Accordingly, the district court is entitled to draw reasonable inferences when coming to its restitution calculation. *See United States v. Walter-Eze*, 869 F.3d 891, 914–15 (9th Cir. 2017).

On appeal, a factual challenge to a restitution calculation is subject to clear-error review. *Gagarin*, 950 F.3d at 607. Broad, unsupported contentions of inaccuracy will generally not overcome that deferential standard of review. A defendant-appellant must undermine the reliability of specific evidence on which the district court relied or undermine specific factual underpinnings of the calculation. *See Waknine*, 543 F.3d at 557–58 (clear error to rely on "summary and . . . conclusory" victim affidavits when defendant challenged affidavits' assertions); *United States v. Matsumaru*, 244 F.3d 1092, 1108–09 (9th Cir. 2001) (clear error to not discount from calculation the value that the victim *did* receive in the fraudulent transaction).

Here, the district court elected not to calculate restitution at the time of sentencing and instead ordered supplemental briefing. The government largely rested on its prior papers and a declaration that attached as an exhibit a table of over one hundred fraudulently obtained loans the government contended were connected to the conspiracy. Artur argued in his supplemental brief that "many of th[e] loans" in the government's table "involv[ed] real companies" and that it

is "unclear whether the loans were fraudulent at all or whether the third party simply had a [legitimate ] connection" to one of the co-conspirators. In a written order, the district court accepted the $17.7 million sum supported by the government's table. Addressing Artur's argument, the court explained that all the loans in the table "are connected to the conspiracy" in "a variety of ways." The table includes loans that were obtained via applications submitted in co-conspirators' own names, using co-conspirators' known aliases, and from IP addresses traced to co-conspirators' homes. Proceeds from included loans were traced to bank accounts and entities controlled by co-conspirators. And the loans included in the table supported the bank and wire fraud counts on which the jury convicted.

On appeal, Artur again suggests in passing that it is "unclear" whether some loans included in the restitution amount were "fraudulent at all" and described the government's table as resting on "cryptic summaries that did not explain [the loans'] illegality." Artur does not identify any particular loans that he thinks were legitimate; nor does he identify which particular "summaries" are so "cryptic" that the loans they describe cannot be connected to the conspiracy. Moreover, Artur does not challenge any of the district court's detailed factual findings that connected the loans in the table to the conspiracy. Accordingly, Artur fell far short of establishing that the district court clearly erred in calculating restitution.

## IV. Due Process and Jury-Trial Right

Artur argues that his Fifth and Sixth Amendment rights to due process and a jury trial require that a jury (not a district judge) find all facts underpinning restitution beyond a reasonable doubt (not by a preponderance of the evidence).

Artur concedes that our precedent forecloses this argument, and he raises it before this panel only to preserve it. *See United States v. George*, 949 F.3d 1181, 1188 (9th Cir. 2020); *United States v. Green*, 722 F.3d 1146, 1148–51 (9th Cir. 2013).

## V. Joint and Several Liability

Vahe requests a limited remand instructing the district court to amend his judgment and commitment order to reflect that his restitution obligation runs jointly and severally with that of his trial co-defendants. The MVRA provides the district court with two options where it "finds that more than 1 defendant has contributed to the loss of a victim": The "court may make each defendant liable for payment of the full amount of restitution *or* may apportion liability among the defendants." 18 U.S.C. § 3664(h) (emphasis added). Here, the district court determined in an order addressing the restitution obligations of four of Vahe's co-defendants that joint and several liability is appropriate. The judgment and commitment order for each of those four defendants further specifies that their restitution obligations run jointly and severally. Yet Vahe's judgment and commitment order does not so specify. The government concedes on appeal that Vahe's restitution obligation runs jointly and severally and that a limited remand would be appropriate. Accordingly, we remand Vahe's case on this narrow ground and instruct the district court to amend Vahe's judgment and commitment order to specify, as everyone agrees, that his restitution obligation runs jointly and severally with those of his four trial co-defendants.

## CONCLUSION

For the above reasons, we **AFFIRM** Vahe's and Artur's restitution obligations, except that we **VACATE AND**

**REMAND** for the district court to amend Vahe's judgment and commitment order to specify that his obligation runs jointly and severally. We address in separately filed memorandum dispositions Vahe and Artur's arguments regarding their jury convictions and Artur's arguments regarding his sentencing.