NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 11 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARK SCHENA,

Defendant - Appellant.

No. 23-2989

D.C. No.
5:20-cr-00425-EJD-1

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted February 11, 2025
Honolulu, Hawaii

Before: S.R. THOMAS, BRESS, and DE ALBA, Circuit Judges.

Mark Schena appeals his convictions for one count of conspiracy to commit

healthcare fraud, 18 U.S.C. § 1349; two counts of healthcare fraud, 18 U.S.C. §§ 2,

1347; one count of conspiracy to violate the Eliminating Kickbacks in Recovery Act

(EKRA), 18 U.S.C. § 371; two counts of EKRA violations, 18 U.S.C. §§ 2,

220(a)(2); and three counts of securities fraud, 15 U.S.C. §§ 78j, 78ff; 17 C.F.R.

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

240.10b-5; 18 U.S.C. § 2. Schena also appeals his restitution order. In an accompanying opinion, we hold that Schena's conduct fell within the scope of EKRA. In this memorandum disposition, we reject Schena's remaining challenges to his convictions. But as to his restitution order, we affirm in part, vacate in part, and remand for further consideration.

1. Schena contends that his EKRA convictions should be reversed because the district court improperly allowed expert and lay witnesses to offer legal opinions about EKRA's scope. We review preserved evidentiary objections for abuse of discretion and unpreserved objections for plain error. *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 835–36 (9th Cir. 2024). In this case, it is not apparent that Schena objected to much of the challenged testimony. But even assuming he did, there was no reversible error.

In the case of the expert witnesses, Quindoza and Kondratenko, some of the testimony in question concerned either basic background on healthcare fraud based on the witnesses' training and experience, or else the witnesses' views on Medicare policy. To the extent their testimony veered into impermissible legal conclusions, Schena for the most part did not object. And in the context of the trial as a whole— which involved extensive evidence of healthcare fraud—the experts' allegedly objectionable testimony did not materially affect the verdict. Even assuming the government bore the burden given the lack of objections, it has demonstrated that

"it is more probable than not that the jury would have reached the same verdict" absent the disputed testimony. *United States v. Wells*, 879 F.3d 900, 923–24 (9th Cir. 2018). In addition, and further minimizing any prejudice, the district court instructed the jury on the law, and we presume that jurors followed the court's instructions. *See United States v. Ovsepian*, 113 F.4th 1193, 1201–02 (9th Cir. 2024).

In the case of the lay witness testimony, that testimony was relevant to showing Schena's wrongful intent. The lay witnesses testified that they knew about EKRA and shared their concerns about possible EKRA violations with Schena. The statute requires the government to prove that Schena acted "willfully," 18 U.S.C. § 220(a), which means that the government must show that Schena had "knowledge that his conduct was unlawful," not just that he had "knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 193 (1998). The lay witnesses' testimony was thus probative of an element of the offense that the government had to prove. And once again, even assuming some of the testimony crossed the line into legal opinion, it did not materially affect the verdict. *Wells*, 879 F.3d at 923–24. Nor was any cumulative error from the challenged expert and lay testimony (whether preserved or not) prejudicial. *See United States v. Wallace*, 848 F.2d 1464, 1475 (9th Cir. 1988) (noting that errors can be reversible in the aggregate even when any individual error is not).

2.      We reject Schena's challenge to the jury instructions on the healthcare fraud and EKRA counts.   Because Schena did not sufficiently object to the instruction in question, we review for plain error.  *United States v. Rodriguez*, 971 F.3d 1005, 1012 (9th Cir. 2020).  To establish plain error, Schena must show "(1) error, (2) that is plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Ferguson*, 8 F.4th 1143, 1145–46 (9th Cir. 2021) (quoting *United States v. Borowy*, 595 F.3d 1045, 1049 (9th Cir. 2010) (per curiam)).

Both the EKRA and healthcare fraud charges required the government to prove that Schena acted "knowingly and willfully."  18 U.S.C. § 220(a), 1347(a). While "willfully" in this context requires the government to show that the defendant knew his behavior was illegal, "knowingly" only requires "knowledge of the facts that constitute the offense."  *Bryan*, 524 U.S. at 193.  To avoid the potential for confusion, when the government is required to prove that the defendant knew his conduct was unlawful, our model jury instructions direct district courts to omit from the "knowingly" instruction certain language stating that "[t]he government is not required to prove that the defendant knew that [his] . . . acts or omissions were unlawful."  Ninth Cir. Model Jury Inst. 4.8 cmt.

In this case, the "knowingly" instruction included this language, apparently inadvertently, and neither the parties nor the district court caught the issue at the

4                                              23-2989

time. Nevertheless, we discern no plain error. The instructions did not logically conflict because they applied to different mens rea. The jury was instructed that it had to find that Schena acted both knowingly and willfully. And the jury was properly instructed that, as to the counts in question, "willfully" required the government to prove that Schena knew his conduct was unlawful. When the jury raised questions about the mens rea requirements, the district court reminded jurors that "[t]he Government must prove each element of each offense." There was also extensive evidence showing that Schena knew his conduct was unlawful. Our decision in *United States v. Liu*, 731 F.3d 982 (9th Cir. 2013), does not require a different result because there, unlike here, the district court "never clarified what [the defendant] needed to know." *Id.* at 995.

3. Schena next challenges the sufficiency of the evidence on his securities fraud convictions. For such a challenge, we view the evidence in the light most favorable to the government. *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc). Schena concedes he did not move for acquittal on these counts below, and so we review for plain error. *United States v. Lopez*, 4 F.4th 706, 719 (9th Cir. 2021).

a. Schena's challenge to Count 7 is without merit. This charge was based on an Arrayit press release "announc[ing] an allergy testing agreement . . . with Sutter Health," a large healthcare provider. In reality, Arrayit had only received

interest from a few doctors at Sutter-owned Palo Alto Medical Foundation (PAMF), and the only contact Arrayit had with Sutter itself was when Sutter sent Arrayit a cease-and-desist letter. While the body of the press release does state that the machines are to be provided to the PAMF doctors, it also references to an "agreement with Sutter Health," says that the company's allergy testing now "include[s] a major healthcare provider," and states that Arrayit is "[p]artnering with healthcare leader Sutter Health." A reasonable jury could find that investors would interpret the press release to falsely imply that Arrayit had an agreement with Sutter.

b. Schena's challenge to Count 8 is similarly meritless. This charge stemmed from a tweet in which Arrayit announced it had started a $240 million "test kit manufacturing run." Schena does not appear to challenge the falsity of the statement and only argues that the statement was not material. He points to the fact that the two investors who testified at trial said the tweet did not immediately lead them to trade Arrayit stock. But the witnesses did not say the tweet did not matter to them. In fact, one said it would have affected "long term" trades. Moreover, Arrayit received a significant number of inquiries from investors asking about the tweet. Taken together, the evidence is sufficient to support a reasonable jury's determination that there was a "substantial likelihood that a reasonable shareholder would consider [the tweet] important." *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

6                                                                                    23-2989

c. Schena's challenge to Count 9 also fails. This count involved a series of emails that Schena sent telling investors that Arrayit had received "more than 50,000 requests" for its COVID test. At the time, it had received fewer than 1,000 requests, and no test was ready or approved by the Food and Drug Administration. Schena argues that the 50,000 figure was not material and the emails should be read to imply that the tests were in development and not necessarily ready. But a reasonable investor at the outset of the pandemic could have found the 50,000 figure material. Nor was the jury required to credit Schena's explanation that he meant only that the test was still in development.

4. The district court ordered $24,289,540 in restitution, based on $21,562,300 in losses associated with the securities fraud violations and $2,772,240 in losses by insurers in connection with the healthcare fraud counts (the district court ordered forfeiture of this same latter amount). We address each component of the restitution order in turn.

a. We vacate the restitution order to the extent of the $21,562,300 allegedly attributable to the securities fraud violations. A restitution award "can compensate 'only for the loss caused by the specific conduct that is the basis of the offense of conviction,' so long as that offense does not involve an element of scheme, conspiracy or pattern of criminal activity." *United States v. Batson*, 608 F.3d 630, 637 (9th Cir. 2010) (quoting *Hughey v. United States*, 495 U.S. 411, 413

7                                      23-2989

(1990)); *see also United States v. Reed*, 80 F.3d 1419, 1422 (9th Cir. 1996) (explaining that circuit precedent "prohibit[s] the trial court from ordering restitution for conduct that is related to the offense of conviction, but that is not an element of the offense").

In this case, a fraudulent scheme was not a necessary element of the offense, but the government maintains it was the basis of Schena's conviction, thus justifying a restitution award based on the claimed duration of the scheme, which allegedly spanned July 15, 2015, to April 14, 2020. Although the indictment contains allegations of such a scheme, Counts 7–9 were more specifically based on three false and misleading statements made on November 19, 2018, August 8, 2019, and March 19, 2020, respectively.

Between the indictment, jury instructions, verdict form, and record as a whole, the parties debate whether the broader five-year scheme can be said to reflect "the specific conduct that is the basis of the offense of conviction" on the securities fraud counts. *Batson*, 608 F.3d at 637 (quoting *Hughey*, 495 U.S. at 413). But in assessing loss for purposes of the Sentencing Guidelines, the district court already recognized that it could not determine whether the claimed $21,562,300 loss to investors was tethered to "the three instances of securities fraud conduct charged in the Superseding Indictment." In so finding, the district court treated "Mr. Schena's conduct of conviction" as the "three instances" of false disclosures identified in

Counts 7–9. Even with the different burden of proof applied to the loss calculation, the district court's characterization of Schena's conduct of conviction undermines the government's reliance on a five-year scheme as the basis for the securities fraud convictions. We accordingly vacate the restitution award as to the securities fraud violations and remand for the district court to calculate it based on the specific conduct that was the basis for these three counts of conviction. *See Batson*, 608 F.3d at 637.

Schena also points out that the district court, in rejecting the government's loss calculation for Guidelines purposes, questioned the basis for the government's assertion that Arrayit's stock became worthless upon Schena's arrest, as well as the government's reliance on a "first-in, first-out" methodology that was, in the district court's view, "devoid of any data or calculations" that would permit meaningful judicial evaluation. On remand, the district court may consider these objections in reevaluating this portion of the restitution award.

b. We affirm the district court's $2.7 million restitution award for healthcare fraud and its related forfeiture award. Schena argues that the district court erred because the allergy testing was not entirely worthless. We review this factual issue for clear error. *United States v. Dadyan*, 76 F.4th 955, 961 (9th Cir. 2023). Testimony at trial supported the government's theory that insurers would not have paid any claims had they known that Arrayit was performing more tests than

medically necessary and was otherwise engaging in fraudulent conduct.  Therefore, the district court did not clearly err in concluding that all the money received from insurers could be considered the result of Schena's healthcare fraud.

*     *     *

We affirm Schena's convictions and the $2.7 million restitution and forfeiture orders associated with the healthcare fraud counts.  We vacate only the $21.5 million restitution award for the securities law violations and remand solely for a redetermination of that portion of the restitution award.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**